860 P.2d 743

Judy SEAL, as Personal Representative of her deceased son, Kevin Seal, Plaintiff–Appellant,

v.

CARLSBAD INDEPENDENT SCHOOL DISTRICT; Roger Harrell, Superintendent of Carlsbad Independent School District; Paul Ricker, Manager of the Carlsbad Natatorium and Employee of the Carlsbad Public Schools; and Therese Rodriguez, Employee of the Carlsbad Public Schools at the Carlsbad Natatorium, Individually and in their Official Capacities, Defendants–Appellees.

No. 20589.

Supreme Court of New Mexico.

Sept. 7, 1993.

Rehearing Denied Sept. 30, 1993.

Hanratty Law Firm, Kevin J. Hanratty, Artesia, Fisk & Vandiver, John Fisk, Artesia, Roth, VanAmberg, Gross, Rogers & Ortiz, John B. Roesler, Santa Fe, for plaintiff-appellant.

Beall & Biehler, P.A., Larry D. Beall, William E. Singdahlsen, Albuquerque, for defendants-appellees.

OPINION

RANSOM, Chief Justice.

This is a wrongful death action brought by Judy Seal as personal representative of the estate of her deceased son, Kevin. Seal appeals from a summary judgment holding that the operation of a swimming pool is an inherently dangerous activity giving rise to strict liability, from which a school district and its employees enjoy statutory sovereign immunity under Section 41–4–4(A) of the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989). *See also Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 391, 827 P.2d 102, 106 (1992) (school districts immune under Tort Claims Act from strict liability for inherently dangerous activity). Holding that operation of a swimming pool is not an inherently dangerous activity and that neither of the alternative holdings of the trial court is dispositive, we reverse.

*Facts.* Kevin Seal was a physically and mentally disabled eighteen-year-old member of a Boy Scout troop for the handicapped. He could not swim and had a history of multiple seizure disorder. In 1988, Kevin went swimming with his troop as part of an aquatic camp that was planned, provided, and supervised by the Boy Scouts of America. The camp was held at the Carlsbad Natatorium, which is owned and operated by the Carlsbad Independent School District. While participating in the program, Kevin drowned, unnoticed by the Scout staff.

*Proceedings below.* The trial court granted immunity from liability to the school district and its employees on two theories. The first was that the operation of a swimming area is an inherently dangerous activity under the definition in *Saiz* and, therefore, any duty to provide adequate safety measures is nondelegable. This results in a strict liability claim for which there is no waiver of immunity under the Tort Claims Act. Alternatively, the court ruled that if operation of a natatorium is not an inherently dangerous activity and the duty is delegable, either the duty was delegated to and accepted by the Boy Scouts as an independent contractor or the

Scouts were an agent of the school district and no claim against the school district would have survived an earlier settlement that Seal made with the Scouts. In arriving at the independent contractor alternative, the trial court found as undisputed the facts that an agreement was reached between the school district and the Scouts that the school district would not have the responsibility of furnishing lifeguards and that the responsibility would be assumed solely by the Scouts. The trial court determined that even if Martin Fleming, a seventeen-year-old Scout who entered into the agreement on behalf of the Scouts, did not have actual authority to contract for the organization, either he had apparent authority or the transaction was ratified by Sheldon Johnson (the district executive for the Boy Scouts) on the first day of the aquatic camp. The court also found undisputed that the Scouts took responsibility for furnishing the lifeguards and did furnish them.

■ *Alternative holdings not a final disposition of issues of primary negligence.* We agree that the school district has no liability for the negligent acts of an independent contractor. *See* §§ 41–4–3(E) & –4(D)(1) (governmental entities only liable for torts of public employees, excluding independent contractors). We also agree that when a public employee (agent) for whom an entity is vicariously liable settles a claim, the entity's liability is satisfied by the settlement. *See Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 730, 779 P.2d 99, 107 (1989). However, neither of these principles relieves the school district from any liability it may have as a consequence of its direct negligence. *See id.* Summary judgment on either of the alternative holdings was not dispositive.

*Issues.* Seal raises four points of error, but we need address only two. The court's holding that the school district employees have no liability in their personal capacities is affirmed, since Seal explicitly abandoned those claims in her reply brief. The two questions we address are:

1. Is the operation of a swimming pool an inherently dangerous activity with nondelegable duties giving rise to a strict liability cause of action that is not actionable under the Tort Claims Act?

2. If the operation of a natatorium is not an inherently dangerous activity and the duty to provide lifeguards was delegated to and accepted by the Boy Scouts, did Seal nonetheless provide sufficient evidence to raise the inference that the school district was directly negligent in some regard? As a subissue, did the trial court err in refusing to admit deposition testimony from the prior trial against the Scouts?

■ *Inherently dangerous activity.* In *Saiz,* we discussed at length what activities are inherently dangerous. We stated that an "activity is inherently dangerous because it involves a 'peculiar risk' in the absence of special precautions, or because it involves a 'special danger' inherent in the work." *Saiz,* 113 N.M. at 394 n. 6, 827 P.2d at 109 n. 6. The school district argues that the activity of swimming by handicapped individuals in need of special attention involves "peculiar risks" of the type referred to in the opinion.

The school district misapplies the definition to the activity of swimming by handicapped individuals. In *Saiz,* if reasonable precautions were not taken, it was relatively certain that injury would occur at some point because of the public location of a high-voltage light post. While the operator of a public swimming pool must provide a lifeguard as a reasonable precaution against the possibility of drowning, *see* Regulations Governing Public Swimming Pools & Private Baths, E.I.B. Reg. 76–1(2–101)(I)(1) (Mar. 25, 1976), the activity of swimming itself is not highly likely to result in injury if that precaution is not taken, as is the touching of an uninsulated high-voltage line.

■ In *Saiz,* we cited to the seminal English case on strict liability, *Bower v. Peate,* 1 Q.B.D. 321 (1876), which states:

[A] man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbour must be expected to arise, un-

less means are adopted by which such consequences may be prevented, is bound to ... do what is necessary to prevent the act he has ordered to be done from becoming wrongful.

*Id.* at 326. There are three elements to liability for inherently dangerous activity: the owner or occupier of the premises must instigate or tolerate the activity; injury must be a relatively certain consequence of the activity unless reasonable precautions are taken; and the absence of the necessary precaution must cause injury. We are aware of no case of "inherently dangerous activity" in which liability was based on harm that should have been anticipated to an especially susceptible victim. The doctrine of inherently dangerous activity pertains to creation or maintenance of a condition that is *universally* dangerous, not one that gives rise to a high risk of harm because of the special circumstances involving the persons coming in contact with the instrumentality. Danger in a swimming pool is not a peculiar risk.

■ *Primary negligence.* We harbor significant uncertainty as to whether the trial court addressed the question of genuine issues of material fact regarding primary negligence of the school district, although we acknowledge that any allegations of such negligence may have been poorly presented in response to the motion for summary judgment. Yet the question was presented, and we believe the trial court was diverted from giving that claim of negligence any consideration because of its misconception concerning the law of inherently dangerous activity. *Saiz,* of course, has nothing to do with the primary negligence of an owner and occupier of land, except to point out that the Belen School District was fifteen percent responsible for damages because of its primary negligence. Immunity only applies to strict liability for the absence of necessary precautions. There is no immunity for concurrent or successive acts of primary negligence on the part of the owner and occupier.

Seal acknowledges that she has not claimed negligent entrustment of the pool to the Boy Scouts. Other issues of primary negligence, however, were not fairly developed and considered. Seal's complaint alleges that the school district and its employees were negligent in two respects: by failing to ensure that a properly trained lifeguard was present *and acting as such* and by failing to provide necessary safety equipment, both of which are required by E.I.B. 76–1(2–101)(I).

We focus on the allegation that the school district and its employees neglected the duty to provide lifeguards. Seal submitted testimony from Johnson that lifeguards had always been provided by the school district for the aquatic camps, and the same was expected for the swim on the day of the incident. This testimony raises the question whether the Scouts were in fact like any business invitee (user) to whom the school district owed a duty of reasonable care to avoid a risk of harm. *See* SCRA 1986, 13–1309 (Repl.Pamp.1991) (owner of a building owes business visitor the duty to use ordinary care to keep the premises safe); *Klopp v. Wackenhut Corp.,* 113 N.M. 153, 157, 824 P.2d 293, 297 (1992) ("in a place of public accommodation, an occupier of the premises owes a duty to safeguard each business visitor whom the occupier reasonably may foresee could be injured by a danger avoidable through reasonable precautions available to the occupier of the premises"); *Castillo v. County of Santa Fe,* 107 N.M. 204, 205, 755 P.2d 48, 49 (1988) (holding that Tort Claims Act contemplates waiver of immunity when negligence of public employees causes unsafe, dangerous, or defective condition on property owned and operated by the government).

■ The duty of the owner or occupier includes acting "reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and tak[ing] reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the property." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 61, at 425–26 (5th ed. 1984) (footnotes omitted) [hereinafter *Prosser*]. Even if at trial the Scouts are determined to have been independent contractors, one who hires an independent contractor must "interfere to put a

stop to any unnecessarily dangerous practices of which he becomes informed." *Id.* § 71, at 510; *see also Emelwon, Inc. v. United States*, 391 F.2d 9, 11 (5th Cir.) ("where an employer gains knowledge of a dangerous situation created by an independent contractor it may incur liability through its failure to halt the operation"), *cert. denied*, 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111 (1968); *Kojic v. City of New York*, 76 A.D.2d 828, 428 N.Y.S.2d 305, 307 (App.Div.1980) ("hirer may be responsible for a dangerous condition negligently created by an independent contractor if the hirer had actual or constructive notice of the condition"). When an independent contractor's work is done on an employer's land, the employer is liable for his personal, primary negligence in failing to prevent activities or conditions that are dangerous to those who enter as invitees. *Prosser, supra*, § 71, at 510–11. Seal submitted the deposition testimony of an expert who stated that she believed that the pool lacked security and the deposition of an expert who stated that the lifelines required by the E.I.B. regulations should have been installed by the school district for the safety of the disabled scouts. Deposition testimony was also submitted evincing that the school district employee on duty had actual knowledge that no Scout staff member was on the deck or in the lifeguard chair at the time Kevin drowned, and that the employee knew that a lifeguard should be on deck.[1] The court apparently did not consider the deposition evidence in support of Seal's response to the motion for summary judgment.

This case is similar to *Srader v. Pecos Construction Co.*, 71 N.M. 320, 378 P.2d 364 (1963). There, the wife of an independent subcontractor was helping her husband roof a house when she fell through a hole in the roof that her husband had covered with felt. She argued that, by ordinance, the general contractor had a duty either to cover the hole with wood or install railings. The trial court granted summary judgment to the general contractor apparently on the theory of no liability for the independent subcontractor's negligence even though there was a question of actual knowledge of the dangerous condition and one of whether the ordinance imposed a duty upon the general contractor, subjecting it to direct liability. For the reasons we reversed the summary judgment and remanded *Srader* for trial on the merits, we do so here.

■ *Admission of deposition testimony.* The trial court erred in refusing to admit deposition evidence from a separate case in response to the motion for summary judgment. The *form* of summary judgment evidence itself does not have to meet the requirements of admissibility for trial evidence, but the *substance* of the evidence must be of a type that can be admitted at trial. The requirement is that the opposing party must put forth specific facts admissible into evidence to establish a disputed material fact. *See Storey v. University of N.M. Hosp.*, 105 N.M. 205, 207, 730 P.2d 1187, 1189 (1986). For example, hearsay is not generally admissible at trial, so affidavits or depositions containing hearsay are not sufficient evidence of a fact. *See Sandoval v. Board of Regents*, 75 N.M. 261, 263, 403 P.2d 699, 700–01 (1965) (court eliminated hearsay statements from the affidavit). However, a deposition that may not be admissible at trial for one reason or another is still a sworn statement that may contain sufficient specific facts admissible into evidence to raise a genuine issue of material fact if it is based on personal knowledge (or, if an opinion, is based on a proper foundation, *see Catalano v. Lewis*, 90 N.M. 215, 217, 561 P.2d 488, 490 (Ct.App.) (affidavit opinion did not explain how opinion was arrived at and was therefore not competent), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977)).

*Conclusion.* Because we hold that the operation of a swimming pool is not an

---

1. We note that "lifeguard" is defined in E.I.B. 76–1 (1–100)(J) as "a person who holds a current ... Lifesaving or equivalent qualification, and who has no duties to perform other than to superintend the safety of those using the swimming pool area during the time the pool is open." Seal presented evidence that every member of the Scout staff was in the water at the time Kevin drowned. Further, Seal's expert testified that the pool industry standard is that at least one lifeguard should be on the deck of the pool so that he or she can see the whole pool area.

inherently dangerous activity, we reverse the summary judgment based on that rationale. Further, we believe that when the trial court said that the Boy Scouts were either an independent contractor or an agent of the school district, the court may have been diverted from considering any genuine issue of material fact of primary negligence.

While we do not preclude the trial court from again granting summary judgment if raised by appropriate motion on remand, we cannot assume, on this record, that the court properly has considered issues of primary negligence.

The grant of summary judgment is reversed except for that portion of the judgment in favor of the school district employees in their individual capacities, and the cause is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA and MONTGOMERY, JJ., concur.