905 P.2d 718

**Valentine ESPINOZA and Debbie Espinoza, husband and wife, both individually and as parents, guardians, and best friends of Valentine Espinoza, Jr., Plaintiffs–Appellants,**

v.

**TOWN OF TAOS, Mayor Eloy Jeantete, Joyce Lucero, Mark Vigil, Sally Martinez, and Gail Martinez, individually and in their official capacities, Defendants–Appellees.**

No. 22662.

Supreme Court of New Mexico.

Oct. 23, 1995.

Law Offices of John Howard, John Howard, Rio Rancho, Jonas Rane, Albuquerque, for Appellants.

Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Scott P. Hatcher, Santa Fe, for Appellees.

*OPINION*

BACA, Chief Justice.

1. Appellants Valentine and Debbie Espinoza appeal a summary judgment entered in favor of the Town of Taos. We review pursuant to SCRA 1986, 12–102(A) (Repl.Pamp. 1992) (providing Supreme Court jurisdiction in cases sounding in contract), to determine two issues: (1) Whether the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp. 1989 & Cum.Supp.1995), waives sovereign immunity when a child is injured on a playground during a summer day camp conducted by a municipality, and (2) whether the Town of Taos's summer day camp application may form the basis of a contract remedy for failure to supervise a minor child in the Town's care. We affirm.

I

2. Appellants enrolled their five-year-old son, Valentine Espinoza, Jr. (Val), and his sister in the Town of Taos's summer day camp program. The Town of Taos actively encouraged Appellant Debbie Espinoza to enroll Val in the program. Because Appellant was concerned about the safety of her two children, she investigated the program. She was told that six camp employees would supervise the children, that the program director would be available for direct supervision, and that the on-site supervisor, Sally Martinez, would physically be present with Val to ensure his safety. Appellant paid $40.00 for each child to attend the summer day camp program. The operation of the program called for an active on-site supervisor and three additional employees when the activities of the program were held at Kit Carson State Park. At the time Val was injured, neither on-site supervisor Martinez nor any other person performing her function was present. Furthermore, there were only two employees with the children at the park.

3. On August 4, 1989, summer day camp had ended for the day and the children were gathered at the playground waiting for their parents to pick them up. The two employees present with the children were inattentive. Val followed other children up a slide rather than using the steps and was injured when he fell from the top as he attempted to turn around. Appellant Valentine Espinoza arrived immediately after the accident and took his son to the hospital. Gail Martinez told

Appellant Debbie Espinoza that the Town of Taos would pay the medical bills, and either Mark Vigil or Joyce Lucero told the Appellants that the Town of Taos had insurance that would cover Val's medical expenses. The Town of Taos did not pay Val's medical expenses. Later it was discovered that Val suffers from asymmetrical facial expression due to permanent nerve damage caused by his fall from the slide.

## II

4. The district court entered summary judgment in favor of the Town of Taos on December 5, 1994. The court found that Section 41–4–6 of the Tort Claims Act does not waive sovereign immunity for the Town of Taos's failure to exercise ordinary care in the supervision of children who participated in its summer day camp program. The court rejected Appellants' contention that the absence of adequate supervision was a dangerous "condition" of the playground for which sovereign immunity had been waived. The court also found that although the application constituted a contract, Appellants could not sue on a breach of contract theory because the parties specifically agreed to exclude any provision for recovery of damages for any injuries sustained by participants. This appeal followed.

## III

5. Appellants contend that the court improperly entered summary judgment. Summary judgment is inappropriate when resolution of a factual dispute is required to determine a legal question before the Court. However, when "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law" we will uphold the entry of summary judgment. *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Such is the case before us.

6. Appellants assert that Section 41–4–6 waives sovereign immunity because "[t]he absence of adequate supervision of children using recreational equipment on property owned and operated by the government has been found to be an unsafe, dan-

gerous or defective condition for which sovereign immunity has been waived." Appellants primarily rely on *Seal v. Carlsbad Independent School District*, 116 N.M. 101, 860 P.2d 743 (1993), in which the Boy Scouts leased a pool from the school district to hold an aquatic camp for disabled scouts. Although the Scouts provided lifeguards, they were in the pool with the children rather than watching over them from the pool deck. The trial court entered summary judgment in favor of the school district because "the operation of a swimming pool is an inherently dangerous activity giving rise to strict liability" for which sovereign immunity is not waived. *Id.* at 102, 860 P.2d at 744. We reversed upon finding that "[d]anger in a swimming pool is not a peculiar risk" that rises to the level of "inherently dangerous." *Id.* at 104, 860 P.2d at 746. Although not addressed by the trial court, we found that Appellant had raised the question of the school district's primary negligence in two respects: (1) primary negligence in not ensuring that a lifeguard was present and acting as such while the pool was being used by the Scouts and (2) primary negligence in not installing lifelines as required by safety regulations. *Id.* Therefore, we remanded for a determination whether the school was liable for "concurrent or successive acts of primary negligence," *id.* at 104, 860 P.2d at 746, as owner of the pool "in failing to prevent activities or conditions that are dangerous to those who enter as invitees," *id.* at 105, 860 P.2d at 747. At no point did we address the issue of negligent supervision.

7. Appellants argue that supervision had always been provided and was expressly promised in the present case, just as lifeguards had always been provided for the aquatic camps in *Seal.* Appellants allege that the injury occurred as a result of the negligence of the Town of Taos in permitting the day camp to operate with inadequate staffing and that liability is predicated on "traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty," *Bober v. New Mexico State Fair*, 111 N.M. 644, 652, 808 P.2d 614, 622 (1991). Appellants assert that this Court and the Court of Appeals have found the following to be unsafe, dan-

gerous, or defective conditions: the absence of adequate supervision at a swimming pool, *Seal,* 116 N.M. at 104, 860 P.2d at 746; the failure to supervise and make reasonably safe the routing of traffic from the State Fairgrounds, *Bober,* 111 N.M. at 653, 808 P.2d at 623; the failure to keep residents safe from roaming dogs on the common grounds of a county housing project, *Castillo v. County of Santa Fe,* 107 N.M. 204, 205, 755 P.2d 48, 49 (1988); and the absence of supervision over known dangerous inmates, *Callaway v. New Mexico Dep't of Corrections,* 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct.App.), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994). Thus, Appellants argue, the absence of supervision constitutes an "unsafe, dangerous, or defective *condition* " for which governmental immunity has been waived.

■■■ 8. Appellee responds that a claim of negligent supervision fits squarely within *Pemberton v. Cordova,* 105 N.M. 476, 734 P.2d 254 (Ct.App.1987). Furthermore, Section 41–4–6 was adopted "to ensure the safety of the general public by imposing upon public employees a duty to exercise reasonable care in *maintaining premises* owned and operated by governmental entities." *Castillo,* 107 N.M. at 206, 755 P.2d at 50 (emphasis added). However, Section 41–4–6 does not grant a waiver for claims of negligent supervision, *Pemberton,* 105 N.M. at 478, 734 P.2d at 256; negligent design, *see Rivera v. King,* 108 N.M. 5, 12, 765 P.2d 1187, 1194 (Ct.App.), *cert. denied,* 107 N.M. 785, 765 P.2d 758 (1988); negligent inspection, *Martinez v. Kaune,* 106 N.M. 489, 491–92, 745 P.2d 714, 716–17 (Ct.App.), *cert. denied,* 106 N.M. 439, 744 P.2d 912 (1987); or negligent classification of a prison inmate, *Archibeque v. Moya,* 116 N.M. 616, 620, 866 P.2d 344, 348 (1993). We agree.

9. The Court of Appeals in *Pemberton* found no waiver of sovereign immunity under the Tort Claims Act for the alleged negligent supervision of a child injured while on school grounds by another student. *Id.* at 478, 734 P.2d at 256. *Pemberton* relied on the strict interpretation of Section 41–4–6 that immunity is waived only when injuries resulted from a defect in a building. *Id.* `Even had the court used *Bober*'s more expansive interpre-

tation that the Tort Claims Act waives immunity for unsafe conditions in buildings *or on the grounds surrounding the buildings,* the holding undoubtedly would not have been different because the critical question is whether the condition creates a potential risk to the general public.

10. We expanded the definition of "building" under Section 41–4–6 in *Bober,* 111 N.M. at 651, 808 P.2d at 621. We recognized that a landlord has a duty to maintain his common grounds in order to reasonably ensure the safety of the general public. *Id.* at 651 & n. 7, 808 P.2d at 621 & n. 7. We found that the State Fair had failed to meet its burden of showing that it exercised ordinary care in protecting the traveling public on Louisiana Boulevard from the traffic exiting the Fairground from Tingley Coliseum. Therefore, we reversed a summary judgment based on immunity under the Tort Claims Act entered in favor of the State Fair. *Id.* at 652–53, 808 P.2d at 622–23. We made no mention of negligent supervision in *Bober* nor did we specifically address *Pemberton.*

11. *Castillo* also involved negligent failure to provide safe common areas. 107 N.M. at 205, 755 P.2d at 49. A child visiting his aunt at her residence in a County of Santa Fe housing complex was severely injured when bitten by dogs running loose on the grounds of the complex. *Id.* We held that the waiver of immunity for public buildings includes the common grounds surrounding the building "to ensure that buildings and property owned and operated by the government are kept safe for the public's use." *Id.* at 206–07, 755 P.2d at 50–51. We did not mention negligent supervision.

12. In *Archibeque,* we distinguished between negligent conduct by public employees in maintaining and operating physical premises owned by the government and negligent performance of administrative functions. *Id.* at 619, 866 P.2d at 347. We found that Section 41–4–6 did not waive immunity for negligent performance of an employee's duties. Instead, we found that both *Castillo* and *Bober* "permitted waiver of immunity when [an] injury was caused by a dangerous or defective condition on the property surrounding a public building, as well as for

injuries caused by defects and dangerous conditions in the building itself." *Archibeque*, 116 N.M. at 620, 866 P.2d at 348. These holdings expanded our earlier interpretations that immunity was waived only for defects in buildings, not the grounds surrounding them. *Id.*

13. The Court of Appeals, in *Callaway*, held that the New Mexico Department of Corrections "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." *Callaway*, 117 N.M. at 643, 875 P.2d at 399. The Court found that the "inmate assailant was unusually dangerous and the prison authorities had knowledge of the danger posed by the inmate." *Id.* Contrary to Appellants' assertion, the Court did not rely on negligent supervision in *Callaway* but observed that the security practices in place resulted in unsafe conditions for the entire prison population. *Id.*

14. All cases cited by Appellants concern negligent conduct that itself created unsafe conditions for the general public. In the case at bar, the negligent conduct itself did not create the unsafe conditions. The playground was a safe area for children. There were no gangs threatening the children, no free-roaming dogs, no influx of traffic, no improperly maintained equipment. The playground is distinct from, for example, the swimming pool at issue in *Seal.* There, the unsafe condition of the premises was a swimming pool without the superintending lifeguard protection required by statute. Here, the playground itself, particularly the slide, was not a condition requiring supervision. Rather, it was the day-camp undertaking and not the condition of the premises that gave rise to duty. The Legislature has expressly stated that because of the broad range of the government's activities, it "should not have the duty to do everything that might be done" for the benefit of the public. Section 41–4–2(A). Even if the Town of Taos arguably had a duty in this case, there can be no liability for any breach of that duty because immunity has not been waived. *Martinez v. Kaune*, 106 N.M. at 491, 745 P.2d at 716.

## IV

15. We find Appellants' breach of contract claim to be meritless. The Town of Taos did not undertake a contractual obligation for liability in the event of injury to a child attending its summer day camp. At most, the terms of the application merely ensured that space would be provided in the day camp program for children who registered and paid the applicable fee. The application makes no mention of ensuring the safety of the children enrolled and expressly states that the Town will not do so. *See* NMSA 1978, § 37–1–23 (actions against governmental entities must be based on valid written contract). We will not read into a contract conditions not intended by the parties. *See Gallup Elec. Light Co. v. Pacific Improvement Co.*, 16 N.M. 86, 93–94, 113 P. 848, 850 (1911).

## V

16. In conclusion, we find no waiver of sovereign immunity for negligent supervision of children at a playground. We also find no contractual agreement to ensure the safety of the children participating in the summer day camp program. We therefore affirm.

17. IT IS SO ORDERED.

RANSOM and FROST, JJ., concur.