911 P.2d 1199

**Leonard BACA, Plaintiff–Appellee,**

v.

**STATE of New Mexico, New Mexico State Fair, and New Mexico State Fair Commission, Defendants–Appellants.**

No. 16,118.

Court of Appeals of New Mexico.

Jan. 17, 1996.

Certiorari Denied Feb. 22, 1996.

John A. Aragón, Coppler, Aragón & Mannick, P.C., Santa Fe, for Plaintiff–Appellee.

Jeffrey L. Baker, The Baker Law Firm, Albuquerque, for Defendants–Appellants.

## OPINION

PICKARD, Judge.

1. This case provides yet another opportunity to discuss the waivers of immunity under the Tort Claims Act, specifically the waiver that applies to buildings, public parks, machinery, equipment, and furnishings— NMSA 1978, Section 41–4–6 (Repl. Pamp.1989). We hold that the district court properly ruled that immunity was waived because we can identify and articulate a condition on the premises that creates a potential risk to the general public.

2. Defendants appeal from a judgment entered on a jury verdict in favor of Plaintiff. In addition to the contention that immunity was not waived, Defendants raise three other issues that we address summarily: (1) whether defense counsel should have withdrawn or been disqualified because of a conflict of interest; (2) whether the district court erred in submitting the particular verdict form to the jury; and (3) whether bailiff misconduct occurred. We affirm.

FACTS

3. Defendants are the State of New Mexico, the New Mexico State Fair, and the State Fair Commission (collectively the State

Fair). The State Fair hired Akal Security to perform security services at the fairgrounds.

4. Plaintiff's evidence showed that he was a horse trainer and entered the fairgrounds to go to the racetrack located there. Plaintiff was going to the track to obtain documentation for the next day's races. He stopped at the fairgrounds ticket booth and showed the parking attendant his permit, which allegedly allowed him to enter without paying the $1 parking fee. He then proceeded toward the racetrack. The parking attendant, however, was of the view that Plaintiff ran the gate without paying, and she told her supervisor, who radioed Akal employees and told them to eject Plaintiff. In the communication (or miscommunication) between the attendant, the supervisor, and the Akal employees, the event was reported as one in which Plaintiff had nearly run over the parking attendant.

5. It was State Fair policy that these facts required Akal employees to eject Plaintiff. Akal employees could not look at Plaintiff's documentation and determine that he was not required to pay the parking fee or that he was permitted to enter the parking gate without paying. They could not question or investigate what happened at the gate. Akal could not exercise any discretion in the matter and was required to follow the ejectment order. In the subsequent attempt to eject Plaintiff, there was an altercation between Plaintiff and the Akal employees as a result of which Plaintiff is permanently disabled.

6. Plaintiff sued the State Fair, Akal, and its employees. Different theories of liability were asserted against each entity. The State Fair originally had its own counsel and cross-claimed against Akal for indemnification based on its contract with Akal. When the cross-claim was dismissed, however, Akal's counsel took over the defense for all Defendants.

7. The verdict form submitted to the jury was the one submitted by Defendants with minor modifications. After the jurors began deliberations, while they were going to lunch, Plaintiff's counsel's father and the bailiff greeted one another and shook hands in front of the jurors. The jury returned a verdict for Plaintiff, finding Akal and its em-ployees 58% liable, the State Fair 40% liable, and Plaintiff 2% liable for Plaintiff's damages.

8. After the verdict, defense counsel moved to withdraw because Defendants needed separate counsel to represent their interests. Represented by new counsel, Akal filed post-trial motions raising the conflict-of-interest issue and the bailiff-misconduct issue. After the motions were denied, Akal settled with Plaintiff. The State Fair did not join in Akal's motions or file its own motions. The State Fair appealed.

IMMUNITY

█ 9. Section 41–4–6 was recently and definitively construed in *Espinoza v. Town of Taos*, 120 N.M. 680, 905 P.2d 718 (1995). That case involved a child who was injured on a playground when he fell off a slide while attending a summer day camp conducted by the Town. *Id.* at 681, 905 P.2d at 719. The allegation was that Town employees were negligent in failing to provide sufficient supervision for campers playing on the slide. *Id.* at 682, 905 P.2d at 720. After reviewing the cases in which immunity was held waived and the cases in which immunity was held not waived, the Supreme Court stated that "the critical question is whether the condition creates a potential risk to the general public." *Id.* at 683, 905 P.2d at 721. Moreover, the cases in which immunity was held waived were cases concerning negligent conduct itself that created unsafe conditions for the general public. *Id.* Examples of dangerous conditions include gangs roaming the premises, dogs roaming the premises, influx of traffic, and improperly maintained equipment. *Id.* at 683–684, 905 P.2d at 721–22. The thrust of the *Espinoza* opinion is thus that, for immunity to be waived, there must be (1) a condition that (2) creates a danger to the general public.

█ 10. In our case, Defendants contend that there was no such condition. They contend that the alleged negligence of the parking attendant and her supervisor in communicating to Akal, "while it may have put [Plaintiff] at risk, did not create a dangerous condition on the State Fairgrounds as to the general population." We believe that Defendants' characterization of Plaintiff's theory for which immunity was waived is too nar-

row. The negligence of the parking attendant and her supervisor, when combined with the policy of requiring security officers to blindly follow State Fair employees' instructions, created a potentially dangerous condition on the fairgrounds that is comparable to the roaming gangs in *Callaway v. New Mexico Dep't. of Corrections*, 117 N.M. 637, 641–42, 875 P.2d 393, 397–98 (Ct.App.), *cert. denied*, 118 N.M. 90, 879 P.2d 91 (1994), and roaming dogs in *Castillo v. County of Santa Fe*, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988).

11. While security guards generally may not be dangerous in the same way that gangs and dog packs can be, guards who are not allowed to use discretion and who are required to use physical force regardless of the circumstances may create comparably dangerous conditions. The dogs in *Castillo* were a bite waiting to happen, a condition on the premises that was a danger to anyone present. The gangs in *Callaway* were a fight waiting to happen, a condition on the premises that was a danger to any prisoner present. Similarly, the traffic in *Bober v. New Mexico State Fair*, 111 N.M. 644, 652, 808 P.2d 614, 622 (1991), was an accident waiting to happen, a condition arising from the premises that was a danger to any driver or passenger present. The unguarded pool in *Seal v. Carlsbad Independent School District*, 116 N.M. 101, 860 P.2d 743 (1993), was a drowning waiting to happen, a condition on the premises that was a danger to any swimmer present. In this case, the security force without discretion was an altercation waiting to happen, a condition on the premises that was a danger to any person who might expect to be treated with respect and dignity—in short to any member of the general public present. This was not "a reasonable and expected risk" of visiting the fairgrounds. *Cf. Archibeque v. Moya*, 116 N.M. 616, 622, 866 P.2d 344, 350 (1993) (Ransom, J., specially concurring).

12. While we candidly admit that the distinctions drawn in the cases in the area of waiver of immunity are exceedingly fine, we believe that the Supreme Court's most recent pronouncement establishes the two-part test of (1) the condition that (2) creates a danger to the public. Having found that, we hold that the district court did not err in ruling that immunity was waived.

## OTHER ISSUES

13. None of the other issues were raised in the trial court by the State Fair. SCRA 1986, 12–216 (Cum.Supp.1995) precludes our consideration of them. Defendants contend that SCRA 12–216(A) applies because they did not have the opportunity to raise the conflict-of-interest issue or the verdict-form issue due to trial counsel's conflict of interest. We disagree. If Defendants have a remedy, it is against their own counsel; Plaintiff should not have the sins of Defendants' counsel visited upon him. *See Resolution Trust Corp. v. Ferri*, 120 N.M. 320, 325, 901 P.2d 738, 743 (1995).

14. In addition, this is not a case like *Dunton v. County of Suffolk*, 729 F.2d 903, 908, *modified on other grounds*, 748 F.2d 69 (2d Cir.1984), in which the appellate court held that it was the trial court's duty, even in the absence of a motion, to insure that counsel does not represent adverse interests. In that case, the person affected was an individual who did not realize his right to conflict-free representation by someone who was not also representing his employer. In this case, the State Fair is a sophisticated litigant who was originally represented by separate counsel, and the record reflects much consideration of the conflict issue by all counsel involved. Under these circumstances, we cannot say that the district court had a duty to act without any issue being called to its attention.

15. Insofar as the bailiff issue is concerned, Defendants ask for a new trial on appeal whereas all they requested in the trial court was a new bailiff. This request for relief was insufficient to preserve the issue of bailiff misconduct requiring a new trial. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987).

## CONCLUSION

16. The judgment is affirmed.

17. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.