2005-NMCA-085

115 P.3d 795

Samuel UPTON, as Personal Representative of The Estate of Sarah Renee Upton, Deceased; Renee Upton, Individually, and Samuel and Renee Upton, Jointly as the Parents of Sarah Renee Upton, Deceased, Plaintiffs–Appellants,

v.

CLOVIS MUNICIPAL SCHOOL DISTRICT, Defendant–Appellee.

No. 24,051.

Court of Appeals of New Mexico.

April 20, 2005.

Certiorari Granted, No. 29,226, July 1, 2005.

Stephen Doerr, Doerr & Knudson, P.A., Portales, NM, for Appellants.

Daniel J. Macke, Elizabeth L. German, Brown & German, Albuquerque, NM, for Appellee.

*OPINION*

WECHSLER, Judge.

{1} Section 41–4–6 of the Tort Claims Act, NMSA 1978, §§ 41–4–1 to 41–4–27 (1976, as amended through 2004) (TCA), provides a waiver of governmental immunity when damages flow from "the operation or maintenance of any building." This case requires us to address the "exceedingly fine" distinctions drawn by cases decided under this section. *See Baca v. State,* 1996–NMCA–021, ¶ 12, 121 N.M. 395, 911 P.2d 1199. Plaintiffs' fourteen-year-old daughter, Sarah, an asthmatic, was required by a substitute physical education teacher to continue exercising after she reported that she was having difficulty breathing and wanted to stop exercising. Shortly after the physical education class, she went to her next class, collapsed, and died. According to Plaintiffs, liability results from the school's indifference to Sarah's medical needs, as well as a fifteen-minute delay in calling an ambulance. The district court granted summary judgment, ruling that immunity had not been waived. We affirm.

*Background*

{2} In ruling on Defendant's motion for summary judgment, the district court accepted Plaintiffs' view of the facts, as well as the conclusion that Plaintiffs' daughter's death was the result of Defendant's negligence. There was evidence that, at the beginning of the school year, Sarah's mother informed the school of Sarah's asthma through an Individualized Education Plan. Sarah's mother also had spoken with Sarah's regular physical education teacher about the fact that exercise could initiate a potentially life-threatening asthma attack, and they agreed that Sarah would only engage in exercise she could do comfortably and could take breaks if necessary.

{3} On August 30, 1999, however, a substitute physical education teacher was teaching Sarah's physical education class. The class was more strenuous than usual. The students were required to run laps in the gym, followed by a version of a basketball game in which two students retrieved a basketball

from the center of the court and then ran to opposite ends to see which one could make a basket first. Sarah ran about half the laps and walked the other half. She did two rounds of the basketball drill and then asked the teacher for permission to stop. The teacher denied permission and Sarah returned to the group, crying. According to several students, Sarah was having difficulty breathing and her face was red. Sarah may have done one more round of the game, but one of the other students stepped in for her on either the third or fourth round.

{4} At the end of the class, Sarah used a special inhaler as she walked to the locker room. She went to her next class, science, which started at 2:28 p.m., and very shortly after class began she collapsed on her desk, at approximately 2:29 p.m. The science teacher called the front office, and the teacher, along with another teacher, tried to administer two inhaler treatments. Sarah's mother was called. A licensed practical nurse who worked at the school arrived to help, checked Sarah's vital signs, and told the front office to call 911. Call logs indicated that 911 was called at 2:44 p.m., approximately fifteen minutes after Sarah had collapsed. Medical attempts to revive her were unsuccessful and she died from her asthma attack.

*Standard of Review*

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review the district court's grant of summary judgment de novo. *Id.* The applicability of the TCA is also reviewed de novo. *Godwin v. Mem'l Med. Ctr.,* 2001–NMCA–033, ¶ 23, 130 N.M. 434, 25 P.3d 273.

*Section 41–4–6*

{6} Plaintiffs contend that immunity has been waived under Section 41–4–6, which reads in pertinent part:

The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful

death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

Our cases that interpret the phrase "operation or maintenance" contained within Section 41–4–6 have not limited its applicability strictly to defects in the physical building. *See Leithead v. City of Santa Fe,* 1997–NMCA–041, ¶ 5, 123 N.M. 353, 940 P.2d 459. Waiver may also be triggered if the facility is negligently operated or maintained in a way that creates an unsafe or dangerous condition on the property or in the immediate vicinity. *Id.* "[T]he critical question is whether the condition creates a potential risk to the general public." *Espinoza v. Town of Taos,* 120 N.M. 680, 683, 905 P.2d 718, 721 (1995); *see Baca,* 1996–NMCA–021, ¶ 9, 121 N.M. 395, 911 P.2d 1199. This case does not involve a building defect. Therefore, if Plaintiffs are to succeed, they must demonstrate that their daughter's death resulted from a dangerous or unsafe condition on the premises that created a potential risk to the general public.

{7} While we have admitted that the law in this area depends on "exceedingly fine" distinctions, *id.* ¶ 12, a survey of the cases animates the distinctions. On one hand are cases like *Seal v. Carlsbad Independent School District,* 116 N.M. 101, 860 P.2d 743 (1993), and *Leithead,* both swimming pool cases. *Seal* reversed a summary judgment granted on the ground of immunity based on a rationale that the claim was one of strict liability when the school district may have been negligent in failing to ensure the presence of a properly trained lifeguard and by failing to supply necessary safety equipment. *Seal,* 116 N.M. at 105, 860 P.2d at 747. *Leithead* found a waiver when the pool may have been operated without an adequate number of trained lifeguards, because "lifeguard services are so essential to the safety of a swimming pool that they seem akin to other kinds of safety equipment, such as lifelines and ladders, that are fundamental in making the premises reasonably safe for the swimming public." *Leithead,* 1997–NMCA–041, ¶ 15, 123 N.M. 353, 940 P.2d 459.

{8} Contrasted against these cases are cases like *Espinoza* and *Pemberton v. Cordova,* 105 N.M. 476, 734 P.2d 254 (Ct.App.1987). *Espinoza* held that immunity was not waived when a child fell off playground equipment while allegedly not being adequately supervised. *Espinoza,* 120 N.M. at 684, 905 P.2d at 722. *Pemberton* held that immunity was not waived when there was a fight between students and the claim was one of negligent supervision. *Pemberton,* 105 N.M. at 477–78, 734 P.2d at 255–56.

{9} Two prison cases, and a public housing case, also illustrate the dividing line. In *Callaway v. New Mexico Department of Corrections,* 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct.App.1994), we held that immunity was waived when prison officials allowed known, dangerous gang members to roam loose among the general prison population. Similarly, in *Castillo v. County of Santa Fe,* 107 N.M. 204, 207, 755 P.2d 48, 51 (1988), immunity was waived when a public housing project allowed dogs to run loose, creating a dangerous condition and placing the public at risk. In *Archibeque v. Moya,* 116 N.M. 616, 619, 866 P.2d 344, 347 (1993), however, our Supreme Court held that immunity was not waived when prison officials erroneously classified a single inmate.

{10} These cases highlight the distinction between the creation of a dangerous condition that places the general public at risk, which results in a waiver, and negligent supervision, which does not. To avoid this distinction, Plaintiffs deny that their claim is one for negligent supervision. They argue that the school's failure to follow policy presents a danger to the general public, claiming that school officials did not follow policies in place designed to deal with medical emergencies. They further argue that the negligent conduct of the school employees "created the unsafe situation that resulted in the death of their daughter." To establish a danger to the general public, they also suggest that any "negligent supervision" and failure as to their daughter "applies to any and all of the students" in the Clovis School District.

{11} On these facts, we disagree. We consider this case closer to *Espinoza, Archibeque,* and *Pemberton,* than to *Seal* and *Leit-*

*head.* The school had a policy in place, which required calling a parent, notifying the front office, and summoning a nurse. The nurse and the principal were to call 911 if necessary. The issues in this case involve the school's failure to follow that policy for one child and its subsequent failure to respond to the child's medical emergency more quickly. The school's error, or errors, may have tragically affected Plaintiffs' daughter, but did not present a dangerous condition to the public at large. No matter how Plaintiffs seek to couch their theory, it remains a failure by the school to properly supervise their daughter. Accordingly, immunity has not been waived.

{12} Plaintiffs rely on *Gallegos v. School District of West Las Vegas,* 115 N.M. 779, 781–82, 858 P.2d 867, 869–71 (Ct.App.1993), for the proposition that decisions by school personnel constitute the operation of the school. *Gallegos* holds that the operation of a school bus includes the many decisions made by the bus driver and that the school district was not immune for any negligence by the driver. *Id.* at 781, 858 P.2d at 869. Plaintiffs argue that the substitute teacher, and those who failed to call 911 more quickly, were like the bus driver in *Gallegos* because operation of the school necessarily includes the myriad of decisions made by school personnel. We disagree that *Gallegos* governs the result in this case. *Gallegos* involved the operation of a school bus and was decided under the provision of the TCA waiving immunity for the negligent operation of a motor vehicle. *Id.; see also* § 41–4–5 (waiving sovereign immunity in the case of negligent torts committed by public employees who were "acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft"). It was not decided under Section 41–4–6. Additionally, Plaintiffs' argument is too broad. If any decision by school personnel constituted the "operation or maintenance of any building" under Section 41–4–6, immunity would be waived in virtually any situation. Our cases have not adopted this position and have instead made it clear that administrative or supervisory functions do not equate with the "operation of any building" or call for a waiver of immunity.

*Conclusion*

{13} The TCA attempts to resolve the tension between encouraging the exercise of governmental powers, free of fear of lawsuits, yet on the other hand recognizing that the government must be encouraged to act responsibly to protect the public against injury. *See Oldfield v. Benavidez,* 116 N.M. 785, 789, 867 P.2d 1167, 1171 (1994) (recognizing that the concept of immunity demonstrates the conflicting concerns of government officials seeking freedom from personal liability and harassing litigation, and injured persons seeking redress for the torts committed by government). Our job in interpreting the TCA is to determine the intent of the legislature. *See Cal. First Bank v. State,* 111 N.M. 64, 73, 801 P.2d 646, 655 (1990); *see also State ex rel. Taylor v. Johnson,* 1998–NMSC–015, ¶¶ 21, 30–31, 125 N.M. 343, 961 P.2d 768 (stating that it is the domain of the legislature to make public policy and to choose from the various options available those that are consistent with the policy chosen); *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994) (stating that we must not second-guess the legislature's resolution of competing policies).

{14} As we have discussed, our cases have interpreted Section 41–4–6 to waive immunity when there is a dangerous condition that places the general public at risk, but hold that the government is immune for negligent supervision. This tragic case falls within the ambit of negligent supervision and, consequently, the school district is immune. Summary judgment is affirmed.

{15} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge.

JONATHAN B. SUTIN, Judge (specially concurring).

SUTIN, Judge (specially concurring).

{16} I concur in the opinion. My reason for writing separately is solely to express my view that the Legislature should consider a sovereign immunity waiver that covers negligence of primary and secondary school ad-

ministrators who fail to have a set and distributed policy in regard to children who are known to be at serious health risk if required to engage in physical exercise, and of school teachers who ignore or disregard the policy or who negligently interpret or administer it. There does not appear to have been any excuse for the school administrators and teachers in the present case not to have assured that Child was protected from having to engage in exercise that was dangerous to her health. This Court is appropriately hesitant under the current state of the case law and the manner in which the Legislature has worded provisions in the Tort Claims Act to interpret "operation of any building" to cover policy failures, failures of communication, or negligent decisions, such as those in this case.

{17} As the opinion indicates, this Court and the Supreme Court have tried to reasonably and carefully apply the Act to the facts of cases that come before us. As the opinion also indicates, to hold in favor of Plaintiffs would be to open a door that the Legislature likely has not intended be opened. Whether in or outside of the school setting, the world can be a dangerous place for high health risk children who are not protected. Outside of school, damages for negligent conduct resulting in harm to otherwise unprotected children known to be at risk are recoverable. At the very least, damages ought to be available for conduct by school administrators and teachers resulting in harm to unprotected, at risk children when the school personnel know a particular child needs protection but negligently or even intentionally fail to provide the protection necessary.