**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LOUREN OLIVEROS, as personal
representative of the Estate of
Jeremy Blouin, deceased,

      Plaintiff-Appellant,

v.

VINCE MITCHELL; GLENN
MEARLS; CITY OF FARMINGTON,

      Defendants-Appellees.

No. 05-2163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-04-51 LH/RHS)**

---

Submitted on the briefs:[*]

Paul J. Kennedy, Mary C. Han, Adam S. Baker, Kennedy & Han, P.C.,
Albuquerque, New Mexico, for Plaintiff-Appellant.

Lisa Mann, Erin E. Langenwalter, Modrall, Sperling, Roehl, Harris & Sisk,
Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **TYMKOVICH**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**TYMKOVICH**, Circuit Judge.

During his arrest by Farmington, New Mexico, police officers on December 18, 2002, Jeremy Blouin was shot in the hip when a police handgun discharged. Blouin disappeared in a swimming mishap six months after the incident and is presumed dead. Louren Oliveros, Blouin's personal representative, subsequently sued the City of Farmington and the two police officers based on the shooting. Oliveros claims that the defendants violated Blouin's Fourth and Fourteenth Amendment rights and committed assault, battery, and negligence in the course of arresting Blouin in 2002. Her claims arise under 42 U.S.C. § 1983 and state tort law.

The district court denied Oliveros's motion for partial summary judgment and granted summary judgment to the defendants on all claims. The court held that her intentional tort claims did not survive Blouin's unrelated death and that no waiver of governmental immunity applied under the New Mexico Tort Claims Act, thereby necessitating dismissal of the negligence claim. Oliveros appeals from that order. She also asks this court to certify to the New Mexico Supreme Court the question of whether under New Mexico law, intentional tort claims survive the unrelated death of the would-be plaintiff.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons discussed below, we deny Oliveros's motion for certification and affirm the district court's grant of summary judgment to the defendants.

## I. Background

On December 18, 2002, defendants Vince Mitchell and Glenn Mearls, Farmington police officers, engaged in a high-speed chase of a vehicle driven by Blouin. After Blouin's car came to a stop, while defendants were handcuffing and arresting him, Mitchell's firearm discharged into Blouin's hip. Mitchell claims that the shooting was accidental. Oliveros does not concede that the shooting was an accident, but argues that if it was, it was caused by defendants' negligence.

Six months after the incident in question, Blouin disappeared while swimming in a lake near Farmington and is presumed dead. The parties agree that Blouin's apparent drowning was completely unrelated to the police shooting.

Oliveros filed this action as the personal representative of Blouin's estate. Her complaint states three causes of action. First, she claims that Mitchell's use of deadly force against Blouin was an unreasonable seizure in violation of the Fourth and Fourteenth Amendments. Second, she claims that in arresting Blouin, both Mitchell and Mearls used excessive force also in violation of the Fourth and Fourteenth Amendments. Her third count charges Mitchell and Mearls with assault and battery and with breaching their duty of care to Blouin "by recklessly,

-3-

grossly negligently, and negligently operating their police units, weapons, and other public equipment." Aplt. App. at 16. Oliveros claims that the City of Farmington is liable for the police officers' acts based on the theory of respondeat superior.

## II. Intentional Tort Claims Under New Mexico Law

The district court dismissed Oliveros's intentional tort claims holding that under the common law, such claims did not survive Blouin's unrelated death. She disagrees, arguing that New Mexico's highest court would likely hold that intentional tort claims survive the unrelated death of the would-be plaintiff because such a holding would be consistent with State law governing negligence claims.

On appeal, Oliveros asks us to certify the following question to the New Mexico Supreme Court:

> Whether intentional tort claims brought under the New Mexico Tort Claims Act survive the would-be plaintiff's unrelated death for purposes of a lawsuit filed by the personal representative of his estate.

"Whether to certify a question of state law to the state supreme court is within the discretion of the federal court." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). Where the "state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." *Id.* We agree with the district court

-4-

that any claims arising out of defendants' alleged intentional misconduct did not survive Blouin's death. And since this conclusion is mandated by applicable New Mexico law, we see no need to certify the question to the New Mexico Supreme Court.

"Under the common law, personal tort actions died with the person of either the plaintiff or the defendant." *Rodgers v. Ferguson*, 556 P.2d 844, 846 (N.M. Ct. App. 1976); 558 P.2d 619; *accord Cain v. Bowlby*, 114 F.2d 519, 521 (10th Cir. 1940). New Mexico's survival statute alleviates the harshness of the common law rule by carving out certain causes of action. It provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same. *The cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor.*

N.M. Stat. § 37-2-1 (1978) (emphasis added). Thus, the statute contemplates that the death of the defendant/tortfeasor would not extinguish a personal injury action. The statute, however, does not identify personal injury actions among the claims that survive the "death of the person entitled," i.e., the would-be plaintiff.

The New Mexico Court of Appeals has characterized this statutory scheme as recognizing a different outcome with respect to the survival of a personal injury claim when the injured person, rather than the tortfeasor, dies before filing suit. *Rodgers,* 556 P.2d at 848-49. The claims in *Rodgers* stemmed from a car

accident involving the defendants and Joseph Wheaton, who subsequently died from causes unrelated to the accident. After Wheaton's death, his estate sued the defendants for negligence. Since the facts did not fit within New Mexico's survival or abatement statutes, the court looked to the common law to determine whether the plaintiff's negligence claim survived Wheaton's unrelated death. Departing from the common law, the court held that it did. *Id.* at 847. In doing so, however, the court drew an important distinction between intentional tort and negligence claims, stating:

> [H]istorical application of the non-survival rule was to violent and intentional torts. It did not develop in connection with the type of tort in this case—negligence—because the tort of negligence did not evolve until approximately 1825.

*Id.* The court concluded that "[a]bsent specific justification, the [common law non-survival] rule should not apply to torts which did not exist when the rule developed." *Id.* Thus, in addition to the causes of action listed in the survival statute, under *Rodgers*, personal injury claims arising from negligence survive the death of the would-be plaintiff. Importantly, the *Rodgers* court made clear that it was "express[ing] no opinion as to the non-survival of other actions under the common law," *id.* at 850, and it reaffirmed that the common law determines the survivability of claims not enumerated in New Mexico's survival statute, *see id.* at 849.

New Mexico's highest court has not yet addressed the survivability of intentional tort claims in light of the survival statute and the exception for negligence claims carved out in *Rodgers*. Accordingly, we must attempt to resolve the issue as the New Mexico Supreme Court would. *Armijo*, 843 F.2d at 407. In our view, New Mexico courts would apply the common law rule and conclude that intentional tort claims do not survive the injured party's unrelated death. Although *Rodgers* departed from the common law, it specifically did so only in the context of negligence claims. It was careful to base its holding on the differing historical antecedents between negligence and intentional conduct, and provides a clear analytical distinction between the causes of action. Based on the court's careful analysis, we are confident the New Mexico Supreme Court would interpret the survival statute as not applying to intentional tort claims. This conclusion is also consistent with our previous decision addressing New Mexico's survival statute and the common law rule. *See Gruschus v. Curtis Publ'g Co.*, 342 F.2d 775, 776 (10th Cir. 1965) (upholding dismissal of defamation claim because it was not listed in survival statute).

Oliveros argues that a case subsequent to *Rodgers*, *Padilla v. Estate of Griego*, 830 P.2d 1348 (N.M. Ct. App. 1992), suggests that New Mexico courts would reach a different result. We disagree. In *Padilla*, the court interpreted the survival statute in a case involving the death of the tortfeasor, not the victim, a situation specifically contemplated by the statute. Under the express language of

the statute, the court had no choice but to uphold the claims. *Id.* at 1352. Since this case involves the death of the alleged victim, *Padilla* lends no support to Oliveros's argument.

Finally, raising the issue for the first time on appeal, Oliveros argues that New Mexico's survival statute frustrates the policies underlying § 1983 and is thus inconsistent with federal law and the Constitution. Since she failed to make this argument in the district court, we conclude that the argument has been waived and decline to consider it.[1] *See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005).

Accordingly, we agree with the district court that Oliveros's tort claims did not survive Blouin's death.

### III. Summary Judgment

"We review a district court's grant of summary judgment de novo, using the same standards applied by the district court." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Viewing the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party, we will

---

[1]     We note, however, that New Mexico's abatement statute affords broad protection to pending claims in the event of a party's death and, in fact, would have saved the § 1983 claims in this case had Blouin filed them before he died. *See* N.M. Stat. § 37-2-4 (1978). We would have difficulty concluding that New Mexico's survivorship laws undermine the goals of § 1983 just because they result in the dismissal of the § 1983 claims in this case. *See Robertson v. Wegmann*, 436 U.S. 584, 593 (1978) ("A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation.").

affirm a grant of summary judgment only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

*A. The Intentional Tort Claims*

The district court dismissed plaintiff's § 1983 claims pursuant to the common law non-survival rule because it found those claims most analogous to intentional tort causes of action. We agree with that conclusion. Plaintiff's § 1983 claims are premised on defendants' excessive use of force and unreasonable seizure of Blouin in violation of his Fourth Amendment rights. The Supreme Court has held that such claims are necessarily predicated on intentional conduct. *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (holding that a Fourth Amendment violation entails "governmental termination of freedom of movement *through means intentionally applied*") (emphasis in original).

As discussed above, Oliveros's claims premised on intentional misconduct did not survive Blouin's unrelated death. Accordingly, we affirm the district court's grant of summary judgment to defendants on Oliveros's § 1983 claims. For the same reasons, we affirm the dismissal of the state law assault and battery claims.

*B.  The Negligence Claim*

The New Mexico Tort Claims Act, N.M. Stat. § 41-4-1 through § 41-4-27 (1978), "shields government entities and public employees from tort liability unless immunity is specifically waived by the Act." *Archibeque v. Moya*, 866 P.2d 344, 346 (N.M. 1993).  Section  41-4-12 of the Act provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort.[2]  *See Methola v. County of Eddy*, 622 P.2d 234, 238 (N.M. 1980); *Caillouette v. Hercules, Inc.*, 827 P.2d 1306, 1311 (N.M. Ct. App. 1992).  In this case, the district court concluded that the defendants' immunity was not waived pursuant to § 41-4-12, because Oliveros did not allege one of the predicate torts enumerated in that section.  We agree with the district court's analysis.  The law is clear that immunity is not waived under § 41-4-12 for "negligence standing alone." *Caillouette*, 827 P.2d at 1311 (*relying on Bober v. New Mexico State Fair,* 808 P.2d 614 (N.M. 1991)).  Since Oliveros's

---

[2] Section 41-4-12 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

state claim is for personal injuries resulting from negligence, she cannot avail herself of the waiver of immunity provided by § 41-4-12.

Finally, Oliveros argues she is entitled to the waiver of immunity found under § 41-4-6 of the Act, which waives a public employee's immunity for negligence committed in the operation or maintenance of equipment.[3] That section provides in relevant part:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

It is clear under New Mexico law that law enforcement officers may be sued under § 41-4-6 for negligently operating equipment. *Smith v. Vill. of Ruidoso*, 994 P.2d 50, 57 (N.M. Ct. App. 1999). Oliveros's theory is that officers Mitchell and Mearls waived their immunity pursuant to this section by negligently operating their police equipment, "to wit a gun and handcuffs." Aplt. Br. at 10. We disagree.

The New Mexico Supreme Court has held that § 41-4-6 is designed to protect the general public. *Archibeque*, 866 P.2d at 347-48. In *Archibeque*, the

---

[3]     Although the district court did not discuss Oliveros's argument under this section of the Tort Claims Act, she made the argument in support of her Motion for Partial Summary Judgment, thereby preserving the issue for appeal.

court concluded that an interpretation of the Act that applied to every individual allegation of government negligence was unsupportable:

> Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, should not have the duty to do everything that might be done, and limits government liability accordingly.

*Id.* at 348 (quotations omitted). As such, a public employee's immunity is waived and he is subject to suit only when his conduct puts the general public at risk.

In *Archibeque*, the plaintiff prisoner charged the defendant prison officer with negligence after the plaintiff was misclassified and placed in the general prison population. Finding no waiver of immunity under § 41-4-6, the court held that although the defendant's conduct put the plaintiff at risk, plaintiff's misclassification did not create a safety risk to the general prison population. *Id.* at 348. The court reaffirmed this public endangerment requirement in *Espinoza v. Town of Taos*, 905 P.2d 718, 721 (N.M. 1995), a premises liability case, stating that the critical question in the § 41-4-6 analysis is whether the condition complained of creates a potential risk to the general public. The Court of Appeals subsequently interpreted *Espinoza* as requiring "(1) a condition that (2) creates a danger to the general public" before immunity will be waived under § 41-4-6. *Baca v. State*, 911 P.2d 1199, 1200 (N.M. Ct. App. 1996).

We conclude that the alleged negligence in this case, defendants' alleged mishandling of a firearm and handcuffs while apprehending Blouin, did not put the general public at risk, and therefore, immunity was not waived under § 41-4-6. Viewing the evidence in the light most favorable to Oliveros, Mearls' act of slamming into Blouin while Mitchell had his gun drawn certainly put Blouin, and for that matter both officers, at risk. But we fail to see how this incident created a danger to the general public. The event in question occurred in the middle of the night and it is clear from the police videotape (Aplt. App. Vol. 2) that no members of the public were present. Since Oliveros has not alleged any acts of negligence that endangered the general public, she cannot avail herself of the immunity waiver provided in § 41-4-6. We therefore affirm the district court's grant of summary judgment to defendants on the negligence claim.

### IV. Conclusion

The judgment of the district court is AFFIRMED, and Plaintiff's Motion For Certification of Question of State Law to the New Mexico Supreme Court is DENIED.