[No. 14099-7-III.   Division Three.   February 6, 1997.]

MIKE ERVIN, *Appellant*, v. COLUMBIA DISTRIBUTING, INC., *Respondent*.

Michael D. Howe and Callaway & Howe, for appellant.

Michael A. Arch, James R.B. Salter, and Foreman & Arch, for respondent.

James H. Webster and Lynn D. Weir, amici curiae.

THOMPSON, J. — Mike Ervin appeals the summary dismissal of his claims against Columbia Distributing, Inc., for unpaid overtime pay. He contends the trial court erroneously concluded his claims were barred because he failed to process them through his union's grievance procedure. We affirm in part, reverse in part, and remand.[1]

Mr. Ervin began working for Columbia in 1984, when he and his father sold their Omak distributorship to Columbia. Mr. Ervin later became operations manager of Columbia's Omak branch, and worked in that capacity as a supervisor until 1989. He left the supervisory position in 1989 and began working as a driver-salesman, which is a position covered by Columbia's collective bargaining agreement with Teamsters Local 760.

According to Mr. Ervin, Columbia officials made it clear from the beginning of his employment that Columbia would not pay overtime wages. Both Mr. Ervin and Columbia's president, Richard W. Whipple, stated there was an understanding between the company and its employees that long hours during the busy summer season would be offset by shorter hours during the winter months. The union contract guaranteed driver-salesmen 40 hours' pay each week.

Mr. Ervin stated he never finished his work in fewer than eight hours, and there were many days when he worked much longer than eight hours. In July 1991, he decided to keep track of his hours on a calendar. He discussed his concerns with a union representative, but did not file a grievance because he believed it would not do any good.

Columbia's contract with the union provided for "time and one-half" pay for hours worked in excess of 10 in a day or 40 in a week. The contract established a grievance procedure (including binding arbitration), which required

---

[1]Counsel for amicus curiae asserted at oral argument that Mr. Ervin was abandoning various issues. However, because it is not clear to what extent Mr. Ervin would be bound by these concessions, we will address all of Mr. Ervin's assigned errors.

employees to file grievances "within fifteen (15) days of the date of the occurrence or discovery," and provided that "[c]laims for additional wages shall be limited to a period of thirty (30) calendar days immediately preceding the date upon which the Employer received notice in writing of the claim."

Mr. Ervin voluntarily quit his job in April 1992. He filed a complaint against Columbia in January 1994, requesting (among other things) compensation for unpaid overtime, as well as exemplary damages and attorney fees. Mr. Ervin later stipulated that his claim was solely for unpaid overtime pay for the period from January 1990 to April 1992.

On Columbia's motion for summary judgment, the superior court dismissed the complaint, holding the overtime issue should have been resolved under the collective bargaining agreement's grievance procedure. The court concluded Mr. Ervin's failure to process a grievance barred statutory relief.

In reviewing a summary judgment order, we engage in the same analysis as did the superior court. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). Summary judgment is appropriate if on the record "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A fact is material if it affects the outcome of the litigation. *Ruff*, 125 Wn.2d at 703 (citing *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980); *Braegelmann v. County of Snohomish*, 53 Wn. App. 381, 383, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989)). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993).

We first consider whether Mr. Ervin's contract-based claim is barred because he failed to pursue his remedies under the collective bargaining agreement's grievance

procedure. As a general rule, federal labor policy[2] requires that an employee who alleges violation of a labor contract must attempt to use the contract's grievance procedure before seeking a judicial remedy. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965); *see Vaca v. Sipes*, 386 U.S. 171, 184, 87 S. Ct. 903, 914, 17 L. Ed. 2d 842 (1967); *see also Moran v. Stowell*, 45 Wn. App. 70, 75, 724 P.2d 396, *review denied*, 107 Wn.2d 1014 (1986). However, failure to exhaust the contractual grievance procedure may be excused in some situations, such as when the employee's union has breached its duty to fairly represent the employee, *Vaca*, 87 S. Ct. at 914, or when resort to the grievance procedure would be futile. *Moran*, 45 Wn. App. at 77-78.

Mr. Ervin argues resort to the contractual grievance procedure would have been futile. He first points out that the collective bargaining agreement itself limits wage claims to the 30 days before the date when the employer is notified of the claim. Indeed, the record contains a letter from the union to Columbia's president indicating any grievance regarding overtime pay would be limited to 30 days. This letter does not prove the contractual remedy would be futile; in fact, it proves the opposite: If Mr. Ervin had timely raised his overtime grievance as required by the contract, it appears the contractual grievance procedure would have provided a remedy.[3]

Mr. Ervin also contends the grievance procedure would

---

[2]As we discuss more fully below, federal common law applies to disputes over interpretation of collective bargaining agreements involving employment relationships governed by the National Labor Relations Act, 29 U.S.C.A. § 151–188 (West 1978 and West Supp. 1996), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 (West 1978). *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957); *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 126, 839 P.2d 314 (1992). "[S]tates cannot use local rules to resolve breach of [collective bargaining agreement] disputes." *Id.* at 126; *see Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 102, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962).

[3]Mr. Ervin has provided no applicable authority for his contention that this 30-day limitation on wage grievances violates federal or state statutes. Also, there is no merit to his argument that an exhaustion requirement would require employees and the union to process new overtime wage grievances every 30

have been futile because Columbia had demonstrated a policy of harassing employees who filed grievances until they quit, or of terminating them on pretextual grounds. Other than his own conclusory allegation regarding an unnamed former Columbia employee, there is no support for this argument in the record. Moreover, the collective bargaining agreement provides for termination only upon "just cause," and any retaliatory action by Columbia would itself have been a legitimate issue for a contractual grievance.

Mr. Ervin has failed to establish that resort to the collective bargaining agreement's grievance process would have been futile. His failure to exhaust that procedure therefore bars his contract-based claim.

Mr. Ervin also contends he is entitled to statutory damages under Washington's Minimum Wage Act, RCW 49.46.[4] Columbia argues these claims, too, were properly dismissed because Mr. Ervin failed to make use of the contractual grievance procedure, because the claims are preempted by federal labor law, or because under the circumstances Columbia is excepted from compliance with the Act. We disagree.

█ Columbia concedes federal law generally does not preempt the Minimum Wage Act, *see Department of Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 762 P.2d 348 (1988), but argues the Act is preempted in this case by section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 (West Supp. 1978) (hereafter section 301). That provision authorizes federal courts to resolve disputes involving collective bargaining agree-

---

days. Injunctive relief would be appropriate in the case of continuing violation of grievance or arbitration awards. *See* 29 U.S.C.A. § 185 (West 1978).

[4]RCW 49.46.130(1) provides in pertinent part: "[N]o employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The Act provides for back wages, costs, and reasonable attorney fees. RCW 49.46.090(1). In oral argument and in subsequent briefing, Mr. Ervin has abandoned his claim under the federal Fair Labor Standards Act, 29 U.S.C.A § 201–219 (West 1978 and West Supp. 1996).

ments, and also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957); *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985); *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 126, 839 P.2d 314 (1992). Section 301 preempts application of state law to interpret or enforce collective bargaining agreements. *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 103-04, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962); *see Lingle*, 486 U.S. at 403-04; *Lueck*, 471 U.S. at 209-10; *Commodore*, 120 Wn.2d at 126.

Whether a state-law claim is preempted by section 301 depends on whether it is "independent" in the sense that "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle*, 486 U.S. at 407; *see Jackson v. Kimel*, 992 F.2d 1318, 1325-26 (4th Cir. 1993) (noting that preemption also would apply if dispute would involve interpretation of "industrial common law," including "practices and procedures relating to the employment relationship"). The Washington Supreme Court has adopted the following test for analyzing section 301 preemption: "A state statutory or common law claim is independent of the CBA — and therefore should not be preempted by section 301 — if it could be asserted *without* reliance on an employment contract." *Commodore*, 120 Wn.2d at 129 (citing Stephanie R. Marcus, Note, *The Need for a New Approach to Federal Preemption of Union Members' State Law Claims*, 99 YALE L.J. 209, 225 (1989)).

A state-law claim is not preempted under section 301 solely because it arises out of the same factual circumstances that may have been involved in a contractual analysis. *Lingle*, 486 U.S. at 410. The United States Supreme Court has disapproved a state "preemption" policy

(ostensibly favoring a collective bargaining agreement's grievance and arbitration provision) that resulted in providing nonunion workers greater protection than union workers under state law:

> Nor need we pause long over the assertion that nonenforcement of valid state law claims is consistent with federal labor law by "encouraging" the operation of collective-bargaining and arbitration process. Denying represented employees basic safety protections might "encourage" collective-bargaining over that subject, and denying union employers the protection of generally applicable state trespass law might lead to increased bargaining over the rights of labor pickets, but we have never suggested that labor law's bias toward bargaining is to be served by forcing employees or employers to bargain for what they would otherwise be entitled to as a matter of course.

*Livadas v. Bradshaw*, 512 U.S. 107, 114 S. Ct. 2068, 2081, 129 L. Ed. 2d 93 (1994) (citations omitted).

In this case, Mr. Ervin could assert his state-law claims under RCW 49.46 without reliance on the collective bargaining agreement. The rights he attempts to assert under the state statute are independent of the agreement or the employer's practices and procedures, and resolution of the statutory claim will depend on the agreement only to determine the appropriate regular rate of pay. Moreover, denying the statutory protection to Mr. Ervin and other union workers like him would effectively chill their exercise of rights under the National Labor Relations Act and frustrate the very purpose of section 301 preemption.

■■ Columbia argues this conclusion conflicts with the "strong public policy . . . favoring arbitration of disputes." *Munsey v. Walla Walla College*, 80 Wn. App. 92, 94, 906 P.2d 988 (1995); *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996); *American States Ins. Co. v. Chun*, 127 Wn.2d 249, 897 P.2d 362 (1995). Columbia has cited no authority for its contention that an arbitration clause in a collective bargaining

agreement may deprive a union member of basic statutory protections afforded to nonunion employees. Indeed, in *Gilmer*, the Supreme Court expressly distinguished its decision from prior decisions involving "the tension between collective representation and individual statutory rights[.]" *Gilmer*, 500 U.S. at 35.

We conclude, as did Division One of this court in *United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 925 P.2d 212 (1996), that the basic statutory rights provided by the Minimum Wage Act may not be waived or altered by a collective bargaining agreement,[5] and that employees are not required to arbitrate these "nonnegotiable" claims. *See Local 246 Utility Workers Union v. Southern Cal. Edison Co.*, 83 F.3d 292 (9th Cir. 1996). In this circumstance, the general preference for arbitration is outweighed by the statutory requirements of the Minimum Wage Act and the strong public policy, articulated in *Livadas,* against depriving union employees of statutory rights that undeniably would be available to nonunion employees.[6]

Federal courts have discussed similar considerations in analyzing the related question whether federal Fair Labor Standards Act (FLSA) claims should be dismissed because of an employee's failure to seek redress under a collective bargaining agreement's grievance procedure. In *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), employees first unsuccessfully filed a grievance under their collective bargain-

---

[5]The Minimum Wage Act expressly provides that collective bargaining agreements may establish wages, hours, and working conditions only "in excess of the applicable minimum" established by the statute. RCW 49.46.110.

[6]Columbia also relies on *Leahy v. City of Chicago*, 96 F.3d 228, 232 (7th Cir. 1996), in which the court noted that "[u]nder the FLSA, employers and employees may make 'reasonable provisions of contract [to guide] the computation of work hours where precisely accurate computation is difficult or impossible.' " (alteration in original) (quoting *Tennessee Coal, Iron & Ry. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 603, 64 S. Ct. 698, 705, 88 L. Ed. 949, 152 A.L.R. 1014 (1944)). *Leahy* does not suggest that a labor agreement may waive or alter the minimum statutory requirements.

ing agreement, then filed an action seeking damages under the FLSA. The Supreme Court rejected the employers' contention that the national labor policy favoring collective bargaining and industrial self-government required that the dispute be resolved solely through the contractual grievance procedures:

> Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.

*Barrentine*, 450 U.S. at 737. Noting that the purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours," *id.* at 739, the court concluded that

> the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

*Id.* at 745; *see U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S. Ct. 409, 27 L. Ed. 2d 456 (1971) (grievance and arbitration procedure does not supersede statute regulating pay of maritime workers); *Tran v. Tran*, 54 F.3d 115 (2d Cir. 1995), *cert. denied*, 116 S. Ct. 1417 (1996).

The policies of the National Labor Relations Act do not preempt Mr. Ervin's Minimum Wage Act claim. The

superior court erred in concluding that claim was barred by his failure to assert them in the contractual grievance process.

Columbia seeks to avoid liability nonetheless by arguing the state statute does not apply for two reasons. First, it relies on the following Department of Labor and Industries regulation:

> **Compensating time off in lieu of overtime pay.** The provisions of chapter 49.46 RCW requiring one and one-half times the regular rate of pay for hours worked in excess of 40 per week does [sic] not apply to any person who requests compensating time off in lieu of overtime pay. Therefore, compensating time may be *as agreed upon by the employer and the individual employee at the request of the employee,* but may not be imposed by the employer in lieu of overtime pay upon any employee who has not so requested such compensating time off.

WAC 296-128-560 (emphasis added).

Columbia argues its informal understanding with its employees regarding overtime hours satisfies this provision. However, even if it were effective against the union, this understanding cannot be viewed as an agreement with Mr. Ervin *individually.* Viewing the facts most favorably to Mr. Ervin, Columbia attempted to impose this understanding without obtaining Mr. Ervin's agreement. It is not exempt on this ground.

Columbia also contends the informal understanding makes it exempt under RCW 49.46.130(2)(f), which excepts from the Act's overtime provision

> [a]n individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than 40 hours per week[.]

This exception applies only if the employer's compensa-

tion system actually provides overtime compensation for working more than 40 hours per week. Mr. Ervin stated he never received compensatory time off. This evidence creates a genuine factual issue, for which summary judgment is not proper.

Columbia also contends Mr. Ervin was an "outside salesman," and thus was exempt from the definition of "employee" under the Minimum Wage Act. RCW 49.46.010(5)(c). The Department of Labor and Industries defines an outside salesman as an employee:

> (1) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business, as well as on the premises (where the employee regulates his own hours and the employer has no control over the total number of hours worked) in the following alternative activities:

> (a) In making sales; including any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition; or

> (b) In obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; or

> (c) In demonstrating products or equipment for sale; or

> (d) In the sale of services and performance of the service sold when the compensation to the employee is computed on a commission basis; and

> (2) Whose hours of work of a nature other than that described in (1)(a), (b), (c) and (d) of this section do not exceed 20 percent of the hours worked in the work week by nonexempt employees of the employer: *Provided*, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work; and

> (3) Who is compensated by the employer on a guaranteed salary, commission or fee basis and who is advised of his status as "outside salesman."

WAC 296-128-540. Mr. Ervin's statement that his sales activities were only "incidental" to his delivery responsibilities creates at least a genuine issue as to whether Mr. Ervin was an outside salesman. Summary judgment is not proper on this question.

We affirm the dismissal of Mr. Ervin's contract-based and federal Fair Labor Standards Act claims, but reverse the dismissal of his state Minimum Wage Act claim and remand for resolution of factual questions regarding that claim.

SWEENEY, C.J., and SCHULTHEIS, J., concur.