1998-NMSC-046

970 P.2d 582

**Clayton SELF and Mark Reid, individually and on behalf of all other New Mexico package car drivers employed during any time on or after November 22, 1994, Plaintiffs–Appellants,**

v.

**UNITED PARCEL SERVICE, INC., an Ohio corporation, Defendant–Appellee.**

**No. 24859.**

Supreme Court of New Mexico.

Nov. 23, 1998.

K. Lee Peifer, Albuquerque, David N. Mark, Seattle, for plaintiffs.

Gilkey & Stephenson, P.A., Duane C. Gilkey, Albuquerque, for defendant.

## OPINION

McKINNON, Justice.

{1} We reverse the trial court's decision that state Minimum Wage Act claims brought by union workers covered by a collective-bargaining agreement are preempted by Section 301 of the Labor Management Relations Act, ch. 120, tit. III, § 301(a), 61 Stat. 156 (codified at 29 U.S.C. § 185(a) (1994)). We hold that these claims were not preempted because they are based on non-negotiable state law rights, and can be resolved independent of any collective-bargaining agreement. For the same reasons, we hold that these workers are not required to exhaust the remedies provided in the collective-bargaining agreement before proceeding in state court. We remand.

### I. Factual and procedural background.

. {2} Plaintiffs are package delivery drivers formerly employed by Defendant United Parcel Service (UPS, or the Company), whose terms and conditions of employment were governed by a collective-bargaining agreement between their union and the Company. Plaintiffs filed suit in state district court alleging that UPS violated the New Mexico Minimum Wage Act, NMSA 1978, §§ 50-4-19 to -30 (1993). Specifically, they complained that UPS automatically deducted

a one-hour meal period from their hours worked despite the Company's actual and constructive knowledge that drivers regularly work through that period. They allege that UPS violated the Act by not crediting them for this and other "off-the-clock" work, and by not paying them time and a half for such work in excess of forty hours a week.

{3} The Company removed the action to federal district court, arguing that Plaintiffs' claims were preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1994). *See* 28 U .S.C. § 1441(a) (1994) (a defendant may remove a civil state court action to federal court when the federal court has original jurisdiction over the claims). The federal district court remanded the case to state court, holding that it lacked federal question jurisdiction [1] "because plaintiffs' claims were not 'founded directly on rights created by collective-bargaining agreements [or] "substantially dependent on analysis of a collective-bargaining agreement,"' *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citations omitted), and could be decided under New Mexico law."

{4} After remand to the state district court, UPS moved to dismiss, arguing that the Minimum Wage Act did not apply to Plaintiffs because they were parties to a collective-bargaining agreement from which they received more than minimum wage and for overtime pay,[2] also arguing that Plaintiffs' claims were preempted by Section 301. Meanwhile, Plaintiffs moved to certify their case as a class action pursuant to the Minimum Wage Act, NMSA 1978, § 50-4-26(B)(2) and Rule 1-023 NMRA 1998. While that motion was pending, the trial court dismissed the case, apparently on the basis that Plaintiffs' claims were preempted under Section 301. Plaintiffs appealed to the Court of Appeals, which certified the matter to this court.

## II. ANALYSIS

{5} *Introduction.* The Company argues that because the terms and conditions of Plaintiffs' employment were controlled by the collective-bargaining agreement, Section 301 implicitly preempts Plaintiffs' claims. Alternatively, it claims the Plaintiffs failed to exhaust their remedies under the collective-bargaining agreement which is required by federal law. Thus, the success of both arguments depends on whether federal law controls disposition of this case. *See Livadas v. Bradshaw,* 512 U.S. 107, 124 n. 18, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *Albertson's, Inc. v. United Food & Commercial Workers Union,* 157 F.3d 758, 761 (9th Cir.1998). We hold that it does not control. Therefore, we reject the Company's arguments, and reverse dismissal of the Plaintiffs' claims by the trial court.

{6} *Standard of Review.* After remand to the state district court, the Company moved to dismiss under Rule 1-012(B)(6) NMRA 1998. Both parties, by submitting affidavits and exhibits, converted the motion into one for summary judgment. *See* Rule 1-056 NMRA 1998; *Knippel v. Northern Communications, Inc.,* 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct.App.1982). Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). The issue on appeal is whether the Company was entitled to a dismissal of Plaintiffs' claims as a matter of law. We review these legal questions de novo. Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 Marq. L.Rev. 231, 233–40 (1991).

{7} *Preemption and Section 301.* The doctrine of preemption is an outgrowth of the Supremacy Clause of Article VI of the United States Constitution.[3] Under it Con-

---

1. UPS also alleged the federal court had diversity jurisdiction. The federal court, however, found no diversity.

2. The Company abandoned this argument on appeal. As we discuss, *infra,* the Minimum Wage Act provides nonnegotiable minimum standards.

3. The second clause of Article VI provides:

   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound

gress may, in certain areas of the law, promulgate a uniform federal policy that States may not frustrate either through legislation or judicial interpretation. *See generally Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). When Congress has not expressly stated its desire to displace state law, the defendant bears the burden of showing Congress' intent to preempt. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (preemption a question of congressional purpose); *accord Brown v. Hotel & Restaurant Employees & Bartenders Inter'l Union Local 54,* 468 U.S. 491, 500–01, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984); *Buzzard v. Roadrunner Trucking Inc.,* 966 F.2d 777, 779–80 (3d Cir.1992) (burden on defendant). In areas of the law traditionally rooted in the States' police power, such as the regulation of the health and safety of workers, federalism concerns dictate that preemption should not be lightly inferred. *Lingle,* 486 U.S. at 412, 108 S.Ct. 1877; *Metropolitan Life,* 471 U.S. at 749–50 n. 27, 755–56, 105 S.Ct. 2380.

{8} Section 301(a) of the Labor Management Relations Act provides in relevant part:

Suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter ... may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a). The United States Supreme Court has held that Section 301 embodies Congress' desire to foster the collective bargaining process and its policy in favor of a uniform federal interpretation of the resulting collective-bargaining agreements. *Lueck* 471 U.S. at 209–10, 105 S.Ct. 1904 (discussing *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) and *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). Section 301 has been understood as Congress' mandate that,

not only should federal courts resolve collective-bargaining agreement disputes, but more importantly, they should develop a uniform body of federal common law for interpreting these agreements. *Id.* at 210–11, 105 S.Ct. 1904 ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation."). In order to effect Congress' purpose, Section 301 has been read to implicitly preempt the use of state law to interpret or enforce collective-bargaining agreements. *Lingle,* 486 U.S. at 403–04, 108 S.Ct. 1877; *Lueck,* 471 U.S. at 209–10, 105 S.Ct. 1904. As the United States Supreme Court explained:

[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute.

*Lingle,* 486 U.S. at 405–06, 108 S.Ct. 1877, *quoted in Hollars v. Southern Pacific Transp. Co.,* 110 N.M. 103, 106, 792 P.2d 1146, 1149 (Ct.App.1989).

■■ {9} *Section 301 does not preempt claims merely because Plaintiffs' union was party to a collective-bargaining agreement.* The Company argues that Section 301 of the Labor Management Relations Act preempts Plaintiffs' lawsuit because the terms and conditions of their employment were governed by a collective-bargaining agreement. The Company's argument, however, is too simplistic. Section 301 does not preempt all employment disputes involving unionized workers. *Caterpillar,* 482 U.S. at 396 n. 10, 107 S.Ct. 2425. The United States Supreme Court has made this clear: "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by

thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI.

§ 301." *Caterpillar,* 482 U.S. at 396 n. 10, 107 S.Ct. 2425. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Lueck,* 471 U.S. at 211, 105 S.Ct. 1904. The preemption question does not depend on the nature of the employment relationship; it instead focuses on the nature of a plaintiff's claims. *Cf. Caterpillar,* 482 U.S. at 396, 107 S.Ct. 2425 ("Caterpillar's basic error is its failure to recognize that a Plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement....").

■ {10} The Company claims that employees forego state-law labor rights by virtue of their participation in a collective-bargaining agreement. The United States Supreme Court has rejected this position as "irreconcilable" with the purposes of federal labor law. *Livadas,* 512 U.S. at 130–32, 114 S.Ct. 2068. Congress never intended Section 301 to displace state wage and hour laws. *Lueck,* 471 U.S. at 211–12, 105 S.Ct. 1904 (Section 301 was never intended to allow collective bargaining parties to agree to what is illegal under state substantive law). If the Company's claim were accepted: "Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." *Lueck,* 471 U.S. at 212, 105 S.Ct. 1904. This is not what Congress intended. *Livadas,* 512 U.S. at 130, 114 S.Ct. 2068 ("[W]e have never suggested that labor law's bias toward bargaining is to be served by forcing employees or employers to bargain for what they would otherwise be entitled to as a matter of course" under state law.). More importantly, such a rule would *penalize* unionized workers by depriving them of protection of minimum standards other workers in the state enjoy, thereby thwarting Congress' intended purpose. *See Ervin v. Columbia Distrib., Inc.,* 84 Wash.App. 882, 930 P.2d 947, 951 (Wash.Ct.App.1997). For these reasons, the United States Supreme Court has said that Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas,* 512 U.S. at 123, 114 S.Ct. 2068 (referring to *Lueck* and *Lingle* ).

■ {11} *Section 301 does not preempt independent state law claims.* Section 301 does not preempt state law claims that are independent of the collective-bargaining agreement. Section 301's preemptive effect is only as broad as necessary to serve its purpose, which is to develop and protect a uniform federal common law for adjudication of collective-bargaining contract disputes. *Livadas,* 512 U.S. at 122–23, 114 S.Ct. 2068; *Metropolitan Life,* 471 U.S. at 756, 105 S.Ct. 2380 ("Federal labor law in this sense is interstitial, supplementing state law where compatible, and supplanting it only when it prevents the accomplishment of the purposes of the federal Act."); *see Lingle,* 486 U.S. at 404, 108 S.Ct. 1877. Accordingly, Section 301 preempts only those claims which require interpretation of the agreement and decisions that might shape the common law concerning the collective bargaining process.

■ {12} *Plaintiffs' claims are independent because they are claims for violation of nonnegotiable state law rights.* The proper test for Section 301 preemption is whether Plaintiffs' claims are for violations of nonnegotiable state-law rights that are legally independent of any right established by the collective bargaining contract, *Lueck,* 471 U.S. at 213, 105 S.Ct. 1904, or whether those claims are "substantially dependent" on its analysis, *Caterpillar,* 482 U.S. at 394–95, 107 S.Ct. 2425, or "inextricably intertwined" with interpretation of its terms, *Lueck,* 471 U.S. at 213–14, 105 S.Ct. 1904. *See also* Stephanie R. Marcus, *The Need for a New Approach to Federal Preemption of Union Members' State Law Claims,* 99 YALE L .J. 209, 228–30 (1989). We examine Plaintiffs' complaint under this test and hold that their claims pose legal questions that can only be resolved by analysis and interpretation of the statute, to which the existence and terms of their collective-bargaining agreement are all but irrelevant. We also conclude that their claims pose factual questions that are only tangentially related, at best, to the collective-bargaining agreement.

{13} Plaintiffs' claims involve legal and factual questions concerning only independent, nonnegotiable state-law rights. "[I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Livadas,* 512 U.S. at 123–24, 114 S.Ct. 2068 (internal citations omitted). "Independent" for Section 301 purposes means that "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle,* 486 U.S. at 407, 409 n. 8, 108 S.Ct. 1877. Independent claims, then, are those based on rights or obligations that devolve on individuals and arise without regard to the existence of any collective-bargaining agreement. For example, the United States Supreme Court has held that suit for breach of an implied employment contract was not preempted by Section 301 because it was based on an understanding between an individual worker and the employer and was separate from the collective-bargaining agreement. *Caterpillar,* 482 U.S. at 388, 394, 107 S.Ct. 2425 (held that complaint for breach of individual implied employment contract is not preempted by Section 301). Conversely, the high Court has also held that a tort suit for bad faith dealings, based on conduct of the company in fulfilling a collective-bargaining contract obligation, was preempted by Section 301 because the claim existed only by virtue of an obligation imposed by the collective-bargaining agreement. *Lueck,* 471 U.S. at 218–19, 105 S.Ct. 1904 ("Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation."). The state bad-faith tort claim was preempted because the elements of the tort required the court to determine what the employer's obligations under the collective-bargaining contract *were* before it could consider whether it acted in bad faith toward those obligations. *Cf. Lingle,* 486 U.S. at 407, 108 S.Ct. 1877 (preempted where resolution of a state-law claim requires construing the agreement).

■ {14} The legal basis of Plaintiffs' claims is Section 50-4-22(C) of the Minimum Wage Act, which provides:

> No employee covered by the provisions of Subsection A of this section shall be required to work more than forty hours in any week of seven days, unless [she or] he is paid one and one-half times [her or] his regular hourly rate of pay for all hours worked in excess of forty hours.

The statute does not pose any questions of law that require interpretation of the collective-bargaining agreement. The Minimum Wage Act conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy, without regard to a worker's relationship with a union or her or his contract with the employer. *See* NMSA 1978, § 50-4-19 (public policy of the Act is to establish minimum standards for *all* workers); *Metropolitan Life,* 471 U.S. at 755, 105 S.Ct. 2380 (state minimum labor standards laws convey rights "independent of the collective-bargaining process [that] devolve on [employees] as individual workers, not as members of a collective organization." (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 745, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), alterations by *Metropolitan Life* court)). These rights are nonnegotiable, meaning that they cannot be waived by private law, including the worker's and the employer's mutual agreement. *Ervin,* 930 P.2d at 952 (the basic statutory rights provided in the Minimum Wage Act may not be waived or altered by a collective-bargaining agreement, and workers are not required to arbitrate these non-negotiable claims). The statute itself conveys the right, imposes the obligation, and provides the remedy for its violation. *See* NMSA 1978, § 50-4-26(B) (providing for wages, liquidated damages, fees and costs to plaintiff prevailing under Act). There is no need to look to the collective-bargaining agreement because its terms, or even its existence, are not relevant to Plaintiffs' case.

■ {15} The Company argues that Plaintiffs' claims raise questions of fact that require interpretation of the agreement, and thus their claims are preempted by Section 301. We disagree. As noted, the agreement

is either irrelevant, or at best only tangentially related, to Plaintiffs' claims. The basis for Plaintiffs' claims is that the Company violated the Minimum Wage Act (Section 50–4–22) by not paying for unreported hours in excess of the regular forty-hour week. To prevail, Plaintiffs must prove: (a) they worked more than forty hours a week, (b) that management knew or should have known that they did so, and (c) that they were not compensated for the overtime. Plaintiffs claim that the Company required them to record a one-hour lunch break, despite the actual or constructive knowledge of the Company that workers almost always worked through the lunch break. They allege several bases for at least imputing such knowledge to the Company. They also allege that management 1) observed such unreported work, 2) that there were widespread driver complaints about such work, and 3) that management was aware that most workers had to work unrecorded hours in order to meet job productivity standards, to avoid discipline, to receive a bonus, or to otherwise make themselves promotable. These allegations pose factual questions to which any collective-bargaining agreement terms are irrelevant. *See Caterpillar*, 482 U.S. at 395 n. 9, 107 S.Ct. 2425. A claim in which each element poses a factual question that can be resolved without reliance on the collective-bargaining agreement is an independent state law claim. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261–62, 266, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

{16} Plaintiffs also allege that the Company has an actual productivity or quota system for encouraging (if not requiring) such off-the-clock work. The Company argues that Plaintiffs will depend on the agreement to prove such a system. We disagree. What Plaintiffs must show is that such a productivity system in fact operated, and not that the system is reflected in the agreement. Any terms relating to such a system would be at best tangentially related to this litigation. *Hawaiian Airlines*, 512 U.S. at 261, 114 S.Ct. 2239 ("[P]urely factual question about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." (quoting *Lingle*, 486

U.S. at 407, 108 S.Ct. 1877, internal quotation marks and modifications omitted)).

{17} *Contract defense does not require preemption.* The Company's reliance on the agreement does not lead to preemption of Plaintiffs' claims. Plaintiffs' Minimum Wage Act rights are nonnegotiable. Even if the Company were to show union acquiescence in the lunch-hour arrangement, this proof would be irrelevant to the Minimum Wage Act analysis. *See Lueck*, 471 U.S. at 211–12, 105 S.Ct. 1904 (Congress did not intend Section 301 to give private agreements the power to overcome conflicting state regulation). Parties to a collective-bargaining agreement cannot agree to conduct that is violative of state law. *Id.* ("Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored."). Even a valid defense that requires interpretation of a collective-bargaining agreement will not preempt an otherwise non-preempted claim. As the high Court recognized in *Caterpillar*,

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

482 U.S. at 398–99, 107 S.Ct. 2425; *Lingle*, 486 U.S. at 403 n. 2, 108 S.Ct. 1877 (noting state courts have concurrent jurisdiction to resolve federal common law questions, as long as they apply the federal common law to them).

{18} *Reference to the agreement for the purpose of calculating damages does not require preemption.* The Company also argues that Plaintiffs' claims are factually preempted because they will require refer-

ence to the agreement in order to establish the amount of Plaintiffs' wages that should have been paid. We disagree. The *Livadas* Court stated that *"Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." . 512 U.S. at 125, 114 S.Ct. 2068 (referring to *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas,* 512 U.S. at 124, 114 S.Ct. 2068.

### III. Conclusion

{19} Since the viability of the Plaintiffs' claims was neither dependent on federal law, nor on the terms and conditions of the collective-bargaining agreement, the claims were not preempted by federal law, and the Plaintiffs were not therefore required to pursue any remedy provided by the collective-bargaining agreement. The trial court's dismissal of the claims is reversed and the complaint is ordered reinstated.

{20}  **IT IS SO ORDERED.**

FRANCHINI, C.J., BACA, MINZNER and SERNA, JJ., concur.

