This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38714**

**TREVOR THOMPSON,**

Plaintiff-Appellant,

v.

**VILLAGE OF LOGAN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Fred Van Soelen, District Judge**

Gilpin Law Firm, LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellant

Brennan & Sullivan, P.A.
James P. Sullivan
Gabriela M. Delgadillo
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This appeal arises from the district court's order granting the Village of Logan's (Employer's) motion for summary judgment, and dismissing Trevor Thompson's (Employee's) claim that Employer violated NMSA 1978, Section 10-16C-3 (2010) of the New Mexico Whistle Blower Protection Act (WPA). Employee argues that the district court erred in granting summary judgment to Employer because (1) there were genuine issues of material fact as to Employee's WPA claim; (2) Employee's communications

with Employer were not part of his job duties and are protected communications under the WPA; (3) Employee presented sufficient evidence to create a genuine issue of material fact that he took action against the wishes of Employer that caused his termination; and (4) Employee presented sufficient evidence of a causal connection between his protected communications and his termination. We conclude that the district court properly granted summary judgment in favor of Employer because Employee failed to establish a causal connection between his alleged whistleblowing activity and his termination. Because this issue is dispositive, we address only this issue and do not reach the other issues Employee raises in this appeal.[1]

## BACKGROUND

**{2}** This nonprecedential memorandum opinion is issued solely for the benefit of the parties. Because the parties are familiar with the facts and procedural history of the case, we limit our discussion to those matters necessary for resolution of the issues presented by this appeal.

## DISCUSSION

### I.     Standard of Review

**{3}** We review the district court's grant of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted).

---

1As part of our decision, we analyzed whether Employee's communications with Employer were part of his job description and thus not protected communications under the WPA. Following our precedent in *Wills v. Bd. of Regents of Univ. of N.M.*, we conclude that Employee's communications with Employer were part of his job description and do not qualify for protection under the WPA because his alleged whistleblowing was, in essence, a personal disagreement with a legitimate managerial decision. 2015-NMCA-105, ¶ 20, 357 P.3d 453 (quoting *Riley v. Dep't of Homeland Sec.*, 315 Fed. Appx. 267, 270 (Fed. Cir. 2009) (stating that "personal disagreements with legitimate managerial decisions" do not demonstrate abuse of authority or "any other kind of activity that could be considered a whistleblowing disclosure")).

## II. Employee Failed to Establish a Causal Connection between His Alleged Whistleblowing Acts and His Termination

**{4}** Employee argues that the district court erred by finding that he failed to establish a causal connection between his alleged whistleblowing activity and his termination. We disagree.

**{5}** The Legislature enacted the WPA "to encourage employees to report illegal practices without fear of reprisal by their employers." *Janet v. Marshall*, 2013-NMCA-037, ¶ 21, 296 P.3d 1253 (internal quotation marks and citation omitted). "The WPA was modeled after its federal counterpart." *Wills*, 2015-NMCA-105, ¶ 19 (citing 5 U.S.C. § 2302(b)(8) (2013)). "The WPA promotes transparent government and the rule of law." *Flores v. Herrera*, 2016-NMSC-033, ¶ 9, 384 P.3d 1070. Particularly relevant here, Section 10-16C-3 of the WPA prohibits a public employer from taking retaliatory action against a public employee if they communicate to their employer or a third party conduct that they believe in good faith to be unlawful or improper. NMSA 1978, Section 10-16C-2(E) (2010) defines an "unlawful or improper act" under the WPA as

> a practice, procedure, action or failure to act on the part of a public employer that: (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

**{6}** Here, Employer made a prima facie showing of entitlement to summary judgment by introducing evidence that Employee was terminated, not for his whistleblowing activity, but for misconduct. Employer established as well that the Employer did not have knowledge of Employee's alleged whistleblowing activity. Consequently, the burden shifted to Employee to demonstrate the existence of specific evidentiary facts which would require trial on the merits. *See Lopes*, 2014-NMCA-097, ¶ 6. Employee failed to meet his burden.

**{7}** In his efforts to meet his burden, Employee directs us to two occasions he claims establish that Employer retaliated against him for his whistleblowing activity. Employee alleges that he was terminated because he "blew the whistle" on Employer when he informed third parties that the Village's senior citizen's center (the Center) was not compliant with the Americans with Disabilities Act (ADA). First, Employee points to a conversation he had with Kathy Hennessey, a safety representative from the New Mexico Self Insurers Fund. Second, Employee points to his conversation at the Center with Donna Hawkins, President of the Village's Senior Citizen's Advisory Board and Russell Feerer, the Village Mayor. Employee claims that in his conversation with Ms. Hennessey, he informed her of the ADA issues with the Center. In his conversation with Ms. Hawkins and the Mayor, Employee claims that he not only told them of the ADA issues, but showed them what specifically was wrong with the Center. We address each of these conversations in turn.

**{8}** We first review the conversation Employee had with Kathy Hennessy. As pointed out above, Ms. Hennessy is an employee of New Mexico Self insurers Fund. This agency provides insurance coverage for the Village of Logan. Employee claims that he informed Ms. Hennessy of the issues with the Center and that as a result of the conversation, she was going to perform a safety inspection of the Center. However, apart from Employee's own statements about his conversation with Ms. Hennessy, there is nothing in the record from Ms. Hennessy attesting to any facts relevant to this case, much less that Employee told her of his concerns about the Center or that she had communicated those concerns to Employer. In fact, Employee stated in his own deposition that the Mayor did not know Ms. Hennessy wanted to do a safety inspection. Additionally, Mayor Feerer and Warren Frost, the Village Attorney, testified in their depositions that they did not know about Employee's conversation with Ms. Hennessy. Thus, Employee failed to establish that Employer retaliated against him because of the conversation he had with Ms. Hennessy.

**{9}** Next, we review Employee's conversation with Donna Hawkins. As noted above, Ms. Hawkins is the President of the Village's Senior Citizen's Advisory Board. Employee submitted an affidavit from Ms. Hawkins where she acknowledges that Employee discussed the Center's ADA issue with her and Mayor Feerer while all three were at the Center. However, the record reflects that Ms. Hawkins does not have any knowledge of the alleged retaliation. In fact, she states that during this conversation, Employee gave Mayor Feerer a document about the ADA, and that the Mayor told Employee that he would bring up the issue at the next Village Council meeting. Further, Employer presented evidence that when Employee mentioned the ADA compliance issue to the Mayor, the Mayor stated that he wanted to hold off to see if the Village received more funds for improvements of the Center in the form of a bond that was on the upcoming ballot. Hence, the evidence in the record concerning this conversation establishes at most that Employee informed Ms. Hawkins and the Mayor of the ADA compliance issues with the Center. Significantly, it does not establish that as a result of the conversation, Employer retaliated against Employee because of the conversation or because of Employee's insistence that the needed repairs be made. In other words, Employee failed to establish a causal connection between this conversation and his termination.

**{10}** Moreover, the record establishes that Employee was fired for misconduct and not in retaliation for his alleged whistleblowing. Both Mayor Feerer and Attorney Frost, testified in their depositions that Employee was terminated due to misconduct. Neither Mayor Feerer nor Mr. Frost stated that they knew about Employee's conversation with Ms. Hennessy. Mr. Frost testified that a conversation Employee had with Mr. Jimmy Neese, the previous Village Administrator, was what caused Employee's termination because they were "fed up" with him and stated that this was the "final straw." Mayor Feerer also testified in his deposition and corroborated that Employee was terminated because he visited Mr. Neese. Employer maintained that the timeline of events supports that Employee was terminated due to misconduct involving Jimmy Neece and his inability to get along with other Village employees; not as retaliation for any alleged whistleblowing. Employee was fired on January 30, 2018, almost two months after he

states he first engaged in whistleblower activity, but only ten days from when he met with Mr. Neese on January 19, 2018.

**{11}** Because Employee failed to establish a causal connection between his whistleblowing activity and his termination by Employer, Employee failed to establish that there were genuine issues of material fact in dispute demonstrating that Employee was terminated in retaliation for his whistleblowing activity. Therefore, Employer was entitled to summary judgment as a matter of law. *See Self*, 1998-NMSC-046, ¶ 6.

**CONCLUSION**

**{12}** For the reasons stated above, we affirm.

**{13} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**